819 So.2d 802 (2001)
C.A.M., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-2970.
District Court of Appeal of Florida, Fourth District.
December 19, 2001.
*803 Carey Haughwout, Public Defender, Margaret Good-Earnest and Samuel A. Walker, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Donna L. Eng, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Charged with possession of marijuana, this juvenile defendant moved to suppress the evidence. He argued that the police officer detaining him had neither probable cause nor any lesser basis to search or seize him. We agree.
The background events are not complicated. Police were looking for a violent adult offender and received a tip that he would be in a certain area in a "Mustang-type" white convertible automobile with a tan top. A Sebring convertible with a tan top passed their view, and they decided to follow it. After a short distance the vehicle drove into a driveway and stopped. The police pulled behind it. Three persons emerged from the vehicle, none of whom was identified in the record as the violent offender for whom police were searching. Defendant was one of the three but not the driver.
As one officer approached the driver, another approached defendant. According *804 to this officer's later testimony, he saw a bulge in defendant's pocket which he conceived could be a weapon but which he did not otherwise describe. So he patted defendant's pocket and immediately recognized, according to his later testimony, that the bulging substance hidden in the pocket and thus invisible to him was marijuana. He thereupon arrested defendant and proceeded to conduct a full search, in which he retrieved a package containing a substance that proved to be marijuana. The trial judge denied the motion to suppress.
As the supreme court explained in State v. Glatzmayer, 789 So.2d 297 (Fla. 2001):
"Suppression issues are extraordinarily rich in diversity and run the gamut from (1) pure questions of fact, to (2) mixed questions of law and fact, to (3) pure questions of law. Reviewing courts must exercise care when examining such issues, for while the issues themselves may be posed in broad legal terms (e.g., whether a suspect was `in custody,' whether conduct by police constituted `interrogation'), the actual ruling is often discrete and factual (e.g., whether police did in fact tell a suspect he was free to go, whether police did in fact ask a suspect if he committed the crime). Appellate courts cannot use their review powers in such cases as a mechanism for reevaluating conflicting testimony and exerting covert control over the factual findings. As with all trial court rulings, a suppression ruling comes to the reviewing court clad in a presumption of correctness as to all fact-based issues, and the proper standard of review depends on the nature of the ruling in each case."
789 So.2d at 301. The court further explained that:
"If the ruling consists of a mixed question of law and fact addressing certain constitutional issues (e.g., probable cause, reasonable suspicion, the `in custody' requirement under Miranda, ineffectiveness of counsel), the ultimate ruling must be subjected to de novo review but the court's factual findings must be sustained if supported by competent substantial evidence. See, e.g., Stephens v. State, 748 So.2d 1028 (Fla.1999)." [e.s.]
789 So.2d at 301. Therefore accepting the trial court's resolution of all contested facts supported by competent evidence, we now proceed to review the application of the Fourth Amendment to those facts de novo.
In this case, the officer testified that over his fourteen-year career in law enforcement, he had felt thousands of nickel bags.[1] He said that he had been trained in narcotics identification and investigation. He has made hundreds of narcotics arrests and has taught classes on narcotics identification, teaching other officers how to perform protective patdowns. He has been assigned to narcotics task forces and was a member of a SWAT team for several years. He has participated in the execution of hundreds of search warrants. From his experience and training with narcotics, most people who roll their own tobacco cigarettes carry their tobacco in a pouch, while marijuana is normally associated with plastic bags. He claims, based on his training and experience, that he can easily feel the difference between a plastic bag commonly used for illegal drugs, and a pouch or case commonly used for tobacco through clothing. On the basis of his power to distinguish between ordinary plastic *805 bags in the pocket and tobacco pouches or cases in the pocket, he testified that as soon as he felt the package through the material of defendant's pants he knew that the youth was carrying marijuana. From this testimony, the court concluded that the officer had probable cause to arrest defendant as a result of merely feeling the outside of his pants and knowing that it was a plastic bag inside.
The facts of this case intersect but, as we shall see, do not entirely overlapwith those in Doctor v. State, 596 So.2d 442 (Fla.1992). That case also involves an officer with a founded suspicion doing a lawful patdown for weapons who then claims to have recognized the feel of unseen "contraband" through the subject's clothing. In upholding the finding of probable cause, the court stressed certain important matters. First the court stated the limited function of the permissible patdown founded on a reasoned suspicion:
"[T]he limited exception to the warrant requirement authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), must be strictly limited to searches necessary to protect the officer's safety. We therefore approve the principle... that during the course of a legitimate frisk for weapons, police may only seize weapons or objects which reasonably could be weapons, despite the fact that the officer may reasonably suspect that the object may be evidence of a crime."
596 So.2d at 444-45. In approving the finding of probable cause in that case, the Doctor court also emphasized:
"We do not suggest that probable cause arises anytime an officer feels an object that he reasonably suspects to be contraband. Not all concealed objects in a person's possession are contraband. Thus, merely seeing or feeling an unknown object does not suffice to show probable cause." [e.s.]
596 So.2d at 445.
Importantly for comparative purposes, Doctor did not rely exclusively on the officer's unusual powers of palpation. As the court explained:
"[T]he totality of the circumstances gave the officer probable cause to believe that Doctor was carrying crack cocaine in his groin area. Doctor exited the vehicle in a suspicious manner, the officers observed a large bulge which Doctor attempted to hide, and Deputy Aprea had knowledge acquired through specific experience with the unique texture of crack cocaine as well as with this type of concealment. Moreover, the size, shape, and texture of the package here severely limited the possibility that the package contained a substance other than crack cocaine." [e.o.]
596 So.2d at 445. We do not find these additional factors present in the case we face today.
All we have after seeing the bulge which, unlike Doctor, is not otherwise describedand the performance of the patdown is the officer's unadorned conclusion that what he felt was marijuana. To be sure, we have the officer's experience and his ability to discern plastic bags in the pants pocket. But we do not have a suspicious gait upon leaving the automobile. We do not have defendant attempting to hide the bulge in the way Doctor did. We do not have any of the quite specific testimony in Doctor as to the particular "size, shape and texture" of this package that would lead anyone with knowledge similar with this officer's to the inescapable conclusion that in feeling the substance through the clothing material of the pants and the packaging inside it wasto the exclusion of all of the many other lawful possibilitiesmarijuana.
*806 Concluding that the state failed to meet the burden of establishing probable cause set forth in Doctor, we therefore reverse the order denying the motion to suppress and instruct the court to grant the motion and suppress the fruits of the search. It follows that the finding of delinquency and the resulting disposition are likewise reversed.
MAY, MELANIE G., Associate Judge, concurs.
TAYLOR, J., dissents with opinion.
TAYLOR, J., dissenting.
I respectfully dissent. I would affirm the trial court's order denying the motion to suppress because the state's evidence adequately supported a finding that the deputy had probable cause for seizing the package of marijuana after the pat-down.
Here, as in Doctor, the officer testified about his extensive training and experience with the particular drug in question. He testified that during his fourteen-year career in law enforcement, he had been trained in narcotics identification and investigation; made hundreds of narcotics arrests; taught classes on narcotics identification; been assigned to narcotics task forces; helped execute hundreds of search warrants; taught officers how to perform protective pat-downs; learned to distinguish the feel of a plastic bag commonly used for contraband from that of a pouch or case used for tobacco products, and felt thousands of nickel bags of marijuana. The officer described his tactile experience with marijuana and explained how this experience helped him identify the substance in appellant's pocket as marijuana. See Jordan v. State, 664 So.2d 272 (Fla. 5th DCA 1995)(discussing that the "plain feel" doctrine requires specific expert testimony as to arresting officer's tactile experience with particular contraband in question).
Moreover, the officer testified that he knew that appellant was carrying marijuana as soon as he felt the package through appellant's clothing. This testimony met the "immediately apparent" standard enunciated in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). There, the Supreme Court held that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity as contraband immediately apparent, a warrantless seizure of the object is justified.
Another factor supporting the trial court's probable cause finding is the officer's testimony that he knew, rather than just suspected, that the substance was contraband. See State v. Bellamy, 723 So.2d 402 (Fla. 5th DCA 1999)(reversing suppression of evidence where officer testified that he was certain that the substance in the suspect's pocket was rock cocaine because he had felt rock cocaine in similar instances between 200 and 300 times); Harris v. State, 790 So.2d 1246, 1249 (Fla. 5th DCA 2001)(concluding that police officer lacked probable cause to seize film canister under plain feel doctrine where officer testified that he was unsure whether film cannister contained cocaine; the officer must be reasonably certain object is contraband).
In reversing the denial of the motion to suppress, the majority stresses the absence of any suspicious circumstances surrounding the stop, as were present in Doctor. While it is true that the "totality of circumstances" in Doctor included the defendant's suspicious manner in exiting his car and concealing the contraband, every case need not contain these factors so long as the specific facts found by the trial court amount to probable cause.
In our recent opinion in State v. J.D., 796 So.2d 1217 (Fla. 4th DCA 2001), we *807 affirmed the trial court's order granting a motion to suppress marijuana seized during a pat-down. In so ruling, we observed that there were no circumstances in that case, such as furtive movements or unusual concealment, as were present in Doctor. However, our ruling was primarily based on other deficiencies in the state's case. We held that the state failed to establish probable cause for the seizure because the state presented no testimony about the officer's expertise in identifying marijuana by its feel nor any testimony from the officer that there was anything unique or distinctive about the seized item that made its illicit nature immediately apparent to him. In addition, the officer in J.D. stated only that he suspected that the substance was "possibly" marijuana. We noted that such testimony, at most, established reasonable suspicionnot probable cause for a search.
In contrast, this case has ample support for a probable cause finding. The court made certain factual determinations regarding the officer's training, experience, and ability to immediately identify the seized object as contraband. These factual determinations are supported by competent substantial evidence. Under Ornelas[2] we "review findings of historical facts only for clear error and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." We review application of the law to the trial court's factual determination under a de novo standard of review. See Porter v. State, 765 So.2d 76, 77 (Fla. 4th DCA 2000)(citing Ornelas and commenting that review of the application of the law to the trial court's factual determination requires a de novo standard of review); State v. Lafond, 757 So.2d 1234 (Fla. 4th DCA 2000)(in reviewing a ruling on a motion to suppress, the appellate court must determine whether the facts relied upon by the trial court support its legal conclusions). In this case, the trial court applied the correct rule of law in finding that the facts furnished the requisite probable cause for seizure of the marijuana.
Unless we, as a reviewing court, are inclined to rule that, as a matter of law, a law enforcement officer cannot form probable cause to believe that a substance he feels inside someone's pocket is marijuana, regardless of his training and experience and testimony concerning the "immediately apparent" nature of the substance, we should defer to the trial court's factual determinations in this case and affirm its denial of the motion to suppress.
NOTES
[1] A "nickel bag" is $5 worth of marijuana.
[2] Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).