DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**COURTNEY PEYNADO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3367

[August 1, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael I. Rothschild, Judge; L.T. Case No. 16-010943CF10A.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Courtney Peynado appeals his withhold of adjudication and sentence for one count of possession of cocaine following a plea. We reverse because the evidence supporting the charge against Appellant was the result of an illegal search and seizure.

Appellant was arrested and charged with one count of possession of cocaine after police found crack cocaine in a food container held by Appellant. Appellant moved to suppress the evidence on the grounds that it was obtained as the result of an illegal search and seizure. The matter proceeded to a suppression hearing where the following was established via the testimony of the arresting officer.

At around 7:30 a.m., the officer and his partner were patrolling a high crime area. The officer, who was wearing a vest with the word "Sheriff" written on it, was driving an unmarked SUV with the windows rolled down. As the officer proceeded to turn at an intersection, he observed two males standing at the corner of the intersection. One of the males, who the officer

identified as Appellant, was holding an open white food container in one hand and a fork in the other.

As the officer turned, Appellant looked up with a "deer in headlights" expression on his face. Appellant then dropped his fork, followed by a large, yellow, chunky item, into the food container and pushed the item down with the fork. Based on his training and twenty-five years of experience as a law enforcement officer, the officer testified that he immediately recognized the item dropped into the food container as crack cocaine. The officer stopped his vehicle, instructed his partner to detain Appellant, and took the container, which contained grits, out of Appellant's hands. Using the fork, the officer lifted the item out of the grits. Testing confirmed that the item was in fact crack cocaine.

On cross-examination, defense counsel attempted to ascertain how far the officer was when he observed Appellant drop the item into the container. In so doing, the record reflects that defense counsel moved about the courtroom several times while asking the officer if the distance separating them was the same as the distance that separated the officer and Appellant. Aside from generically testifying that he was "close enough to see the crack drop out of [Appellant's] hand," the officer steadfastly refused to give an approximation of his distance from Appellant. In fact, the officer told defense counsel "[y]ou can go right out the door, I still won't say."

After viewing the cocaine, which the court described as a white, semi-waxy, one inch square which at first glance looked like a pat of butter, the court made the following finding with regard to the officer's credibility:

> First, there's no way I believe the officer when he says he was able to immediately identify the object that was dropped into the container as being crack cocaine. I don't think—I think it's incomprehensible from almost any distance based on what this court observed to be able to say that no matter with what training and experience that the object was in fact crack cocaine.
>
> . . .
>
> I can tell you with complete surety, even with perfect vision, from the size of the item that I saw in evidence there's no way that someone from the back of this courtroom would be able to tell me that they could recognize what I saw as a white square dropping into a takeout plate was crack cocaine. If it

2

was maybe a foot away or two feet away or even five feet away, with the officer's training and experience considering where he was, etc., maybe [it] could be something I could buy.

Nonetheless, citing to case law involving the application of the plain view doctrine, the court denied the motion to suppress based on the following legal conclusions:

[T]he standard isn't whether it was cocaine or not, it's whether or not the incriminating nature of the evidence was immediately apparent and that police are not required to know what exactly the item is, it's just a question whether or not the circumstances in seeing the item lead the officers to believe reasonably that it is incriminating, that there's incriminating nature to the evidence.

In this case we have a situation where officer pulls up where the individual recognizes the person in the car to be an officer is surprised, nervous. The description of the officer like a deer in headlights. In response to that, the person who happen[s] to be in the high crime narcotics area drops first the fork that he's using to eat items immediately followed by what the officer claims he . . . sees crack cocaine which I do not believe, but does drop an item that is consistent potentially with crack cocaine into the plate that he's holding and proceeds to push the item down into the plate all in response to seeing a police officer.

I think taken those circumstances in its context, I think the officer does have a reasonable belief that what [Appellant] was dropping did have an incriminating nature. Although I do not believe that the officer could identify particularly what it was but since he's not required to under the circumstances, would lead a reasonable officer or reasonable person to believe that what was being dropped into the [container] was incriminating in nature and therefore justified an investigatory stop.

After the court denied his motion to suppress, Appellant entered a plea of no contest, reserving his right to appeal the suppression ruling. Based on his plea, the court withheld adjudication and sentenced Appellant to twenty-four months of drug offender probation. This appeal follows.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and

3

effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The officer, however, "must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Id.* at 123–24 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

In finding that the officer had the requisite reasonable suspicion to detain Appellant and search and seize the food container, the trial court in the instant case relied on case law involving the application of the plain view doctrine. Under that doctrine, items in plain view may be seized without a warrant if the incriminating character of the items are immediately apparent to the officer. *Keller v. State*, 946 So. 2d 1233, 1234 (Fla. 4th DCA 2007). Stated differently, upon seeing items in plain view, the officer "must have probable cause to believe a crime is being, is about to be, or has been committed." *Id.* Although the officer is not required to know that the items are contraband for certain, there must be "facts available to the officer [which] would lead a reasonable man of caution to believe that certain items may be contraband." *State v. Walker*, 729 So. 2d 463, 464 (Fla. 2d DCA 1999). "These facts may include not only the appearance of the suspected contraband, but also all of the surrounding circumstances." *State v. Fischer*, 987 So. 2d 708, 712 (Fla. 5th DCA 2008). "Based on an officer's training and experience, the incriminating nature of a substance in open view may be determined by the officer's visual observation and identification of the substance." *Id.*

In the present case, the trial court made an express finding that it did not believe the officer immediately identified the item as cocaine based on his visual observation of the item. To the contrary, the court found that it was "incomprehensible from almost any distance based on what this court observed to be able to say that no matter with what training and experience that the object was in fact crack cocaine." Rather, the court found that the incriminating nature of the item was determined by the surrounding circumstances, namely Appellant's nervous reaction to seeing the officer and his subsequent attempt to conceal the item. Appellant's movements, however, were insufficient to give the officer reasonable suspicion, let alone probable cause, to believe that the item was contraband or that Appellant was involved in criminal activity. *See Welch v. State*, 689 So. 2d 1240, 1241 (Fla. 2d DCA 1997) (holding that although the officers could have properly engaged in a consensual police-citizen encounter upon spotting the defendant stuff a baggie into his pants while in a high crime area, the officers "acted prematurely in actually seizing him"); *M.J.S. v. State*, 620 So. 2d 1080, 1081 (Fla. 2d DCA 1993) (holding that the defendant's

startled reaction to seeing the officer and subsequent attempt to conceal something in his mouth "did not give the police officer a reasonable suspicion or probable cause to believe that the [defendant] was involved in criminal activity").

In sum, we hold that the trial court erred in denying Appellant's motion to suppress. Because the suppression ruling was established as a dispositive issue, Appellant's withhold of adjudication and sentence is reversed. *See Osorio v. State*, 43 Fla. L. Weekly D1043, D1045 (Fla. 4th DCA May 9, 2018).

*Reversed.*

LEVINE and KUNTZ, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***